IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DICELLO LEVITT & CASEY LLC,<br><br>                          Petitioner,<br><br>      v.<br><br>OBJECTING MINORITY NOTEHOLDERS TO THE PROPOSED CONSENT JUDGMENT BETWEEN THE CONSUMER FINANCIAL PROTECTION BUREAU AND THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST I and U.S. BANK NATIONAL ASSOCIATION as INDENTURE TRUSTEE, *et al.*,<br><br>                         Respondents. | Case No. 1:19-cv-00252<br><br>Judge Joan H. Lefkow<br><br>Related to: Consumer Financial Protection Bureau v. The National Collegiate Master Student Loan Trust, et al.<br><br>Civil Action No. 17-cv-01323 MN<br>Pending in the United States District Court for the District of Delaware |

**RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO QUASH SUBPOENA**

      Petitioner, DiCello Levitt & Casey LLC ("DLC"), has moved to quash, ECF No. 2 (the "Motion,") a subpoena issued to it by the Respondents[1] (the "Subpoena," attached as Ex. A)

---

[1] The Respondents consist of Waterfall Eden Master Fund, Ltd.; Waterfall Delta Offshore Master Fund, LP; Waterfall Sandstone Fund, LP; Baldr Sherwood Fund, Inc.; One William Street Capital Master Fund, Ltd.; OWS ABS Master Fund II, LP; OWS COF I Master, LP; OWS Credit Opportunity I, LLC; OWS Global Fixed Income Fund (USD-Hedged), Ltd.; LibreMax Master Fund, Ltd.; LibreMax Value Master Fund, Ltd.; LibreMax MSW Fund, Ltd.; AG Mortgage Value Partners Master Fund, L.P.; AG TCDRS, L.P.; AG Pisgah, L.P.; AG Super RMBS, LLC; and AG Opportunistic Whole Loan Select, L.P. (collectively, "Objecting Noteholders"); and U.S. Bank National Association as Indenture Trustee ("Indenture Trustee"). Respondents have coordinated with a larger group of parties whose intervention in the Underlying Action was granted by the Issuing Court: U.S. Bank National Association, the Indenture Trustee; Wilmington Trust Company (in its capacity as the "Owner Trustee"); Ambac Assurance Corporation (as an insurer of the Trusts); GSS Data Services, Inc. (in its capacity as the "Administrator"); Pennsylvania Higher Education Assistance Agency, (a servicer); Transworld Systems, Inc. (a servicer); and the Objecting Noteholders (such parties collectively, "the Intervenors").

arising out of the lawsuit *Consumer Fin. Protection Bureau v. The Nat'l Collegiate Master Student Loan Trust*, C.A. No. 17-1323-MN (J. Noreika) (the "Underlying Action"), pending in the United States District Court for the District of Delaware (the "Issuing Court"). For the reasons expressed in Respondents' Motion to Transfer, ECF No. 12, DLC's Motion should be transferred to the Issuing Court for resolution. In the event this Court denies the Motion to Transfer and instead decides to resolve the Motion, it should be denied.

## PRELIMINARY STATEMENT

DLC's arguments to avoid the discovery sought by the Subpoena are unsupported and lack any substantive merit.

First, the documents sought by the Subpoena, particularly as narrowed by the Respondents during the meet and confer process, are relevant to the contested issues that the Issuing Court identified as "Threshold Issues" within the scope of immediate discovery in the Underlying Action. The Issuing Court ordered that discovery could be taken on whether DLC's co-counsel was authorized to execute a proposed consent judgment ("PCJ") with the Consumer Financial Protection Bureau ("CFPB") and, even if it were technically authorized to do so, whether the execution of the PCJ was otherwise improper. DLC admitted that it was involved in drafting and revising the PCJ, and in communications with other counsel purporting to represent the Trusts and with the CFPB concerning the same. At a minimum, DLC's work on the PCJ and those communications are responsive to the Subpoena, and given that DLC has billed the Trusts over $940,000, there are likely more responsive documents and communications.

Second, while DLC argues that the Subpoena subjects it to an "undue burden," that argument is based entirely on DLC's misguided relevance claim. DLC does not provide any specifics, let alone offer evidence, demonstrating that the Subpoena creates any burden on DLC

whatsoever, let alone an "undue" one.

Third and finally, DLC's claim that the documents and information sought by the Subpoena are protected by privilege is no reason to quash the Subpoena. DLC was indirectly purportedly retained by Chaitman to represent the Trusts, and has sought payment from Trusts' funds – funds that were expressly granted to the Indenture Trustee for the Noteholders' benefit. DLC has done nothing to support its claim of privilege, other than baldly asserting that the privilege exists. This does not suffice under the Federal Rules. Even if DLC had sought to support its privilege claims with facts, it is the Trusts that hold any privilege, not DLC. And the Trusts have never asserted any such privilege. Finally, any communications between DLC and the CFPB, a third party, are not privileged in any event.

DLC's Motion to Quash should be denied and the Intervenors should be permitted to obtain discovery from DLC in accordance with the Issuing Court's order.

## FACTUAL BACKGROUND

### I. The Trusts

The Trusts were created in 2003-2007 in connection with the securitization of over 840,000 student loans with an aggregate initial value of approximately $15 billion. They were formed pursuant to the Delaware Statutory Trust Act, Del. Code Ann. tit. 12, §§ 3801 *et seq.*, and are governed by several integrated agreements. Broadly speaking, the Trusts are administered by an owner trustee, an indenture trustee, an administrator, and student loan servicers. The Trusts issued notes that entitle investors to cash flows from the student loans. The Trusts also issued residual interests in the form of certificates, which entitle their holders to engage in certain activities in connection with the Trusts and receive any proceeds remaining upon the satisfaction of the Trusts' obligations, including with respect to all payments due on the notes.

In or about 2009, VCG acquired the Trusts' residual interests.[2] VCG has since used those interests to engage in a multi-year campaign to seize control of the Trusts. As part of its efforts, it has caused various law firms to be engaged to allegedly represent the Trusts, but which actually advance VCG's own interests. Those law firms include DLC, Chaitman LLP, and McCarter & English LLP ("McCarter"), all of which have had a hand in the PCJ, the Underlying Action, and other improper activities performed at the behest of the Owners.

## II. The Underlying Action

The CFPB commenced the Underlying Action in September 2017 to seek approval of the PCJ, which will impact the servicing and collection of loans in the Trusts' portfolio. DLC admits that it played a direct role in negotiating and drafting the PCJ, including revising drafts of the PCJ and communicating with the CFPB about the PCJ. *See* Jan. 8, 2019 Letter from Amy Keller to Andrew Cordo, ECF No. 13, Ex. 2, at 2; Jan. 11, 2019 Letter from Amy Keller to Uri Itkin, ECF No. 13, Ex. 4, at 1-2. Once DLC provided its input, the McCarter law firm executed the PCJ, purportedly on behalf of the Trusts, at VCG's direction, and without any of the Intervenors' consent, though the consent of certain Intervenors is expressly required under the Trusts' governing agreements in these circumstances. Attorneys from DLC also filed appearances in the Underlying Action, Underlying Action, ECF No. 58, attached as Ex. B, but withdrew those appearances about two months later, Underlying Action, ECF Nos. 75-77, attached as Exs. C, D, and E.

The PCJ is a product of VCG's scheme to gain control of the Trusts and their cash flows. VCG was able to execute the PCJ by directing the Owner Trustee to retain VCG's chosen law

---

[2] VCG refers to VCG Securities, LLC; VCG Owners Trust; VCG Special Opportunities Master Fund, Ltd.; NC Owners, LLC; NC Residuals Owners Trust; CeCe & Co. Ltd., LLC; Pathmark Associates, LLC; Donald Uderitz; and Jorge Rodriguez-Lugo.

firms, like DLC and McCarter. VCG then directed those firms to act in the name of the Trusts. Several of the law firms used by VCG, including DLC and McCarter, have filed actions against the Trusts, seeking awards of the fees purportedly incurred in connection with their work related to the PCJ.[3] DLC is currently seeking the payment of over $940,000 from the Trusts in a lawsuit pending before the Cook County Chancery Court.

The Intervenors filed motions to intervene in the Underlying Action in September and October of 2017, generally on the grounds that the Trusts' purported consent to the PCJ adversely affected the Intervenors' contractual or financial interests without any of the necessary process and in contravention of the Trusts' governing documents. The Issuing Court granted each of the motions by an order and opinion dated October 19, 2018. Underlying Action, ECF Nos. 95-96, attached as Ex. F. In that order, the Issuing Court recognized that "significant questions exist regarding the authority of prior counsel to sign the PCJ on behalf of the Trusts, and over the objection of the Owner Trustee." *Id.* at 11. The Issuing Court also found that each of the Intervenors "has contractual obligations related to the Trusts that would be impacted should this Court grant the PCJ. Moreover each Movant has shown that it has interests in the Trust Related Agreements that are likely to be modified or invalidated or otherwise impacted by the PCJ." *Id.* at 7.

### III.     The Joint Submission and Scheduling Order

After granting the intervention motions, the Issuing Court requested a jointly proposed briefing and discovery schedule. *See* ECF No. 13, Ex. 3 (the "Joint Submission"). In the Joint Submission, the CFPB and the Intervenors agreed that the Court's consideration of the CFPB's

---

[3]     *See McCarter & English LLP v. NCMSLT*, No. 654144/2018 (N.Y. Sup. Ct.); *DiCello Levitt & Casey LLC v. NCMSLT*, No. 2018-CH-08828 (Ill. Cir. Ct. Ch. Div.).

motion to approve the PCJ should be separated into two phases. The CFPB and the Intervenors offered competing proposals for the scope of Phase One. The CFPB proposed no discovery and a single "threshold" issue: "whether the law firm of McCarter & English had the authority to execute the PCJ on behalf of the Defendants under the Trust Related Agreements." *Id.* at 2. The Intervenors requested that Phase One pertain to three threshold issues and include discovery. *Id.* at 4-5; Intervenors' Proposed Order, Underlying Action, ECF No. 98, at 1-2, attached as Ex. G. Over the CFPB's objections, the Issuing Court largely adopted the Intervenors' proposal in substance for broader discovery for two threshold issues in its November 29, 2018 Scheduling Order:

1. Whether the law firm of McCarter & English had the authority to execute the Proposed Consent Judgment on behalf of the Defendants under the Trust Related Agreements and applicable law; and

2. Whether – authority aside – it was improper or (in violation of Trust Related Agreements) for McCarter & English to enter into the Proposed Consent Judgment. [4]

*See* ECF No. 13, Ex. 1 (the "Scheduling Order").

---

[4] This second threshold issue identified by the Issuing Court mirrored the Intervenors' request for discovery into the propriety of the PCJ "authority aside":

> Whether – authority aside – it was otherwise improper (or in violation of the Trust Related Agreements) for McCarter & English to enter into the PCJ – which would result in the equity holders of the Trusts obtaining control of the Trusts' activities to their benefit and to the detriment of the Noteholders and other stakeholders in the Trusts – without the Noteholders' and other stakeholders' consent. This issue also addresses whether the PCJ was negotiated on an arm's length basis, by whom and at whose direction, and specifically whether the negotiator for the Trusts actually advocated for the Trusts' and the Noteholders' interests, rather than for the interests only of the equity holders. A companion issue is whether Intervenors were entitled to receive information about and then participate in consent negotiations, but were excluded.

Joint Submission at 4.

The Scheduling Order authorizes the Intervenors to seek document and deposition discovery from the CFPB and third parties with respect to these "Threshold Issues." Scheduling Order at 2. Originally, document production was to be complete by January 22, 2019, but that date has been extended to March 8, 2019. Amended Scheduling Order, attached as Ex. H.

### IV. Efforts to Resolve the Instant Dispute

DLC served responses and objections to the subpoena, opposing compliance on the basis of relevance, burden, and privilege. Following DLC's objections, counsel for DLC and the Intervenors engaged in a pair of meet and confer discussions on December 28, 2018 and January 11, 2019. *See* ECF No. 13, Exs. 2, 4; Jan. 14, 2019 Letter from Uri Itkin to Amy Keller, attached as Ex. I. During those meet and confer discussions, counsel for the Intervenors agreed to narrow the scope of the documents sought under the Subpoena to all documents reflecting DLC's involvement with the Underlying Action as it relates to the Threshold Issues, including but not limited to related conversations with other counsel and work on the PCJ. *See* Ex. I. Despite those offered limitations, DLC refused to comply with the Subpoena and filed the instant Motion. ECF No. 2. On January 25, 2019, the Intervenors filed a Motion to Transfer resolution of DLC's Motion to Delaware. ECF No. 12.

### **ARGUMENT**

In moving to quash a third-party subpoena, "[t]he party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012) (denying motion to quash third-party subpoena in part); *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at \*3, \*6 (N.D. Ill. Jan. 2, 2008) (denying motion to quash in part); *see also In re: Subpoena Upon Nejame Law, PA,* No. 16-CV-4619, 2016 WL 3125055, at \*4 (N.D. Ill. June 3, 2016) (quoting *Pac. Century* and denying the non-party's motion to quash).

"The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26 (b)(1)." *Chavez v. Hat World, Inc.*, No. 12-CV-5563, 2013 WL 1810137, at *2 (N.D. Ill. Apr. 29, 2013). Rule 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant . . . ." Fed. R. Civ. P. 26(b)(1). Under Rule 26, "[t]he relevancy standard for discovery is a low one." *Stewart v. Gen. Motors Corp.*, No. 86 C 4741, 1988 WL 6927, at *3 (N.D. Ill. Jan. 27, 1988). "[D]iscovery is not improper simply because a party's request is likely to unearth some documents that eventually prove to be irrelevant to that party's claim," especially given that discovery is relevant if it appears "reasonably calculated to also lead to the discovery of admissible evidence." *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 6568242, at *5 (N.D. Ill. Dec. 17, 2012) (quoting Fed. R. Civ. P. 26(b)(1)); *see also Hodgdon v. Nw. Univ.*, 245 F.R.D. 337, 340 (N.D. Ill. 2007) (denying motion to quash third party subpoena based on movant's "excessively narrow view of what constituted relevant evidence"); *Chavez*, 2013 WL 1810137, at *2.

"[C]ourt[s] can modify or exclude portions of a subpoena only if the [movant] carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad." *also In re: Subpoena Upon Nejame Law, PA,* 2016 WL 3125055, at *4 (internal quotations omitted; second alteration in original). Even where the movant is a non-party, like DLC, "it is up to the [movant] to establish undue burden with a particularized showing." *Reed v. Illinois*, 318 F.R.D. 77, 79, 81 (N.D. Ill. 2016) (denying non-party's motion to quash).

DLC concedes that it played an integral role in drafting and negotiating the PCJ, the propriety of which is central to the Threshold Issues identified by the Issuing Court. DLC has not even attempted to show that it faces any burden, let alone an "undue" burden, in responding to the Subpoena. Nor has it attempted to establish that any particular document sought by the

8

Subpoena is privileged. Not only has DLC failed to make the "particularized showing," *id.*, necessary to meet its "difficult burden" in prosecuting a motion to quash, *In re: Subpoena Upon Nejame Law, P.A.*, 2016 WL 312055, at *4, it has not made any showing at all. DLC's Motion should be denied.[5]

## I. The Scheduling Order Expressly Authorized the Third-Party Discovery Relating to the Threshold Issues Sought by the Subpoena

The Subpoena seeks documents concerning (i) the CFPB's investigation of the Trusts, (ii) the CFPB's enforcement action against the Trusts, (iii) and the PCJ. DLC asserts it need not respond to the Subpoena because it has no information relevant to the Threshold Issues. *See* ECF No. 3, at 7, the "DLC Memorandum" (stating that all documents "that DLC has" are "beyond the Threshold Issues"). However, DLC appears to be both interpreting the Threshold Issues too narrowly *and* misconstruing what information is relevant to the Threshold Issues and therefore within the scope of permissible discovery.

DLC's contends that the Threshold Issues are limited to issues "bearing on McCarter's authority to sign the [PCJ]." *Id*. at 6. DLC also asserts that it "was not involved in the decision to have McCarter sign the [PCJ] and performed no research regarding McCarter's ability to sign the [PCJ]," *id*. at 2, and therefore it has no documents or information related to the Threshold Issues. However, the Threshold Issues and the scope of discovery permissible under Rule 26 are far broader than DLC makes them out to be. Phase One discovery encompasses the Threshold Issues of (1) whether McCarter & English had the authority to execute the PCJ; and (2) the propriety of entering the PCJ, regardless of such authority. *See* Scheduling Order at 1. Further,

---

[5] DLC's concern that materials produced in connection with this action will be used in DLC's action against the Trusts pending in Cook County, DLC Memorandum at 3, is meritless and should be alleviated by the Stipulated Protective Order, soon to be entered in the Underlying Action, which will limit the use of produced confidential materials to this action.

9

information is relevant, and therefore discoverable, where it is reasonably likely to inform the issues (here, the Threshold Issues).  *See*, *e.g.*, *State v. Tri-Star Indus. Lighting, Inc.*, 99 C 8156, 2000 WL 1508248, at *1 (N.D. Ill. Oct. 6, 2000) (relevancy encompasses "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

In light of DLC's concessions that it played a direct role in negotiating and drafting the PCJ,  *see* ECF No. 13, Exs. 2, 4, it is not credible that DLC possesses no information relevant to whether the PCJ was authorized, proper, and negotiated at arm's length (*i.e.,* the Threshold Issues).  To the contrary, DLC is necessarily in possession of substantial information bearing directly on the Threshold Issues, including, by way of example, the terms of DLC's engagement by VCG and Chaitman, with McCarter and other law firms purporting to act for the Trusts; DLC's understanding of the purpose of those engagements; the negotiation of the PCJ with the CFPB, including information concerning what VCG and the CFPB wanted to accomplish through the PCJ; the extent to which the Trusts or other deal parties should be held liable for the alleged misconduct purportedly uncovered by the CFPB; and the intended and unintended consequences of the PCJ considered by DLC, McCarter, VCG, and others.

DLC's impermissibly narrow interpretation of the Threshold Issues is underscored with respect to the second Threshold Issue, which calls for an inquiry into whether the PCJ was "improper" *independent* of both questions of authority ("authority aside") and the governing agreements (treating the "violation of the Trust Related Agreements" in the disjunctive with the use of the word "or").  *See* Scheduling Order at 1.  As set forth in the Joint Submission from which the Court adopted the second Threshold Issue, see Joint Submission at 4, the Intervenors are entitled to discover whether the PCJ was negotiated by VCG, DLC and the other law firms

either (i) for the benefit the Trusts or (ii) for the benefit of the VCG entities at the expense of the Trusts and their stakeholders. Documents and testimony concerning the negotiations of the PCJ between the CFPB and VCG and its team of lawyers, DLC included, are directly relevant to determining the intended purpose and the foreseen and unforeseen consequences of the PCJ. Therefore, pursuant to the Scheduling Order, the Intervenors are entitled to discovery from DLC concerning its direct role in the negotiations.

For these reasons, the Court should find that the Intervenors' discovery requests are relevant and should deny DLC's Motion.

## II.   The Burden on DLC in Producing Documents and Information Responsive to the Subpoena is Minimal, If Any, and DLC Does Not Argue Otherwise.

While DLC vaguely claims that the Subpoena imposes an "undue" burden, it does nothing to articulate, let alone support, that claim, other than insisting that the information sought by the Subpoena is irrelevant. *See* DLC Memorandum at 4-5. As demonstrated in Section I, *supra*, DLC is wrong.

To the extent DLC now claims that there is some undue burden independent of its relevance assertions, that claim similarly fails. "One claiming undue burden must do more than intone the phrase." *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, 6:15-CV-1095, 2017 WL 1233047, at *3 (N.D. Ill. Apr. 4, 2017) (citing *EEOC v. Aerotek, Inc.* 815 F.3d 328, 334 (7th Cir. 2016)). To meet this burden, the objecting party must 'specifically detail the reasons why each [request] is irrelevant.'" *Williams*, 2008 WL 68680, at *3 (motions to quash granted in part and denied in part).

Here, DLC has not identified or articulated any burden whatsoever that the Subpoena imposes on it, let alone an undue one. *See Reed v. Illinois*, 318 F.R.D. 77, 79 (N.D. Ill. 2016) (finding third-party movant's "unadorned assertions" insufficient to establish undue burden);

Case 1:19-cv-00352-UNA Document 19 Filed 02/08/19 Page 12 of 15 PageID #: 154

*Hodgdon*, 245 F.R.D. at 341 (refusing to quash subpoenas: "Courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause."). Nor has DLC provided an affidavit illustrating the alleged obstacles, thus failing to comply with even the minimum evidentiary requirements. *Papst*, 2017 WL 1233047, at *3, *8 (denying motion to quash on grounds that "[t]he party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request").[6]

DLC's undue burden objection should therefore be overruled.

### III. DLC's Privilege Assertions Lack Merit.

In its Motion, DLC asserts without elaboration that the Subpoena seeks "DLC's work product performed on behalf of the [Trusts] and attorney-client communications" and that, as a result, the Subpoena should be quashed in its entirety. DLC Memorandum at 8-9. DLC's sweeping claims do not even approach meeting its burden under Rule 45, and should be overruled.

First, DLC has failed to demonstrate that either the attorney-client privilege or work-product protection applies to any particular documents responsive to the Subpoena. The burden of showing privilege or protection rests with the party asserting the privilege. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983) (work-product protection); *Matter of Walsh*, 623 F.2d 489, 493 (7th Cir. 1980) (attorney-client privilege). Parties objecting to discovery on the basis of privilege or work-product doctrine must make more than a "blanket

---

[6] Like the subpoena recipient in *Papst*, DLC cannot claim that it is "unrelated to the" Underlying Action, nor can it claimed it was "dragged into [the Underlying Action] to answer questions out of the blue." *Papst*, 2017 WL 1233047, at *4 ("[a]s long-time counsel to plaintiff in the litigation . . . [ movant] is not unrelated to the suit"). More importantly, "[e]ven if [it] were, it would still be up to [DLC] to establish 'undue burden' with the particularized showing that the law requires." *Id*.

assertion" of privilege or work-product protection. *Papst*, 2017 WL 1233047, at *6 ("Rule 45(e)(2)(A) provides that a person withholding subpoenaed information under a claim of privilege must in addition to making the claim describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing privileged information, will enable the parties to assess the claim. Thus, a blanket claim of privilege is fundamentally at odds with the Federal Rules of Civil Procedure."). Instead, in order to establish the privilege, DLC must "describe the nature of the documents [or] communications. . . in a manner. . . that will enable other parties to assess the claim." *Holmes v. Hernandez*, 221 F.Supp. 3d 1011, 1015 (N.D. Ill. 2016) (citing Fed. R. Civ. P. 26(b)(5)(A) and 45(e)(2)(A)).

DLC has failed to do any of this. DLC has not even identified any documents it is claiming privilege over, let alone produced a privilege log that fulfills the Rules' specific requirements. *See Sandra T.E. v. South Berwyn School Dist*. 100, 600 F.3d 612, 623 (7th Cir. 2010) (stating rule that privilege logs must sufficiently identify documents for other parties to assess claim of privilege). DLC's privilege assertions are no reason to quash the Subpoena. Instead, as the Subpoena itself contemplates, Ex. A at Schedule B, Instruction 8, DLC should produce a privilege log that allows the Intervenors, and the Court, to evaluate DLC's assertions of privilege.

Second, DLC has failed to demonstrate that it has standing to assert the attorney-client privilege to shield documents from production to the Intervenors. DLC asserts that its work related to the proposed consent judgment was performed on behalf of the Trusts. ECF No. 3 at 8. But DLC offers no explanation why *it* can assert privileges that may belong to the Trusts or whether properly empowered representatives of the Trusts have instructed the firm to assert any applicable privileges. *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 192 F.R.D. 263, 268

(N.D. Ill. 2000) ("[T]he privilege rests with the client, not the attorney.").

Moreover, DLC (i) was indirectly retained by the Owner Trustee on behalf of the Trusts, (ii) has taken the position that its work was performed on behalf of the Trusts, and (iii) has sought payment of its fees as Owner Trustee expenses from Trust assets pledged to the Indenture Trustee for the benefit of the Noteholders.  Nevertheless, DLC states no basis for why its documents should be shielded from the Intervenors, which include the Owner Trustee and the Trust's other representatives and beneficiaries.

## CONCLUSION

For the foregoing reasons, the Objecting Noteholders and the Indenture Trustee respectfully request that the Court deny DLC's Motion to Quash.

Dated: February 8, 2019

Respectfully submitted,

/s/ Morgan R. Hirst

Morgan Hirst (IL-06275128)
mhirst@jonesday.com
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL  60601
Tel. (312) 782-3939
Fax (312) 782-8585

*Counsel for U.S. Bank National Association as Indenture Trustee*

/s/ James A. Morsch

James A. Morsch (IL-06209558)
jim.morsch@saul.com
SAUL EWING ARNSTEIN & LEHR LLP
161 N. Clark Street, Suite 4200
Chicago, IL  60601
Tel. (312) 876-7100
Fax (312) 876-0288

Michael Hanin
Uri A. Itkin
mhanin@kasowitz.com
uitkin@kasowitz.com
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Tel.  (212) 506-1788
*Pro Hac Vice Motions on File*

*Counsel for the Objecting Noteholders*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2019, I filed the foregoing with the Clerk of the United States District Court using the CM/ECF system, which will send notification electronically to all counsel of record.

Dated:  February 8, 2019                    */s/ Morgan R. Hirst*

                                            Morgan R. Hirst