IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DiCELLO LEVITT & CASEY LLC,<br><br>Movants,<br><br>v.<br><br>OBJECTING MINORITY NOTEHOLDERS TO THE PROPOSED CONSENT JUDGMENT BETWEEN THE CONSUMER FINANCIAL PROTECTION BUREAU AND THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST I, and U.S. BANK NATIONAL ASSOCIATION as INDENTURE TRUSTEE, *et al.*,<br><br>Respondents. | Case No. 1:19-cv-00252<br><br>Judge Joan H. Lefkow |

### DiCELLO LEVITT & CASEY LLC's OPPOSITION TO
### MOTION TO TRANSFER MOTION TO QUASH SUBPOENA

DiCello Levitt & Casey LLC ("DLC") is a Chicago-based law firm which once represented the National Collegiate Student Loan Trusts[1] ("NCSLTs") in a variety of capacities,[2] including in an action brought by the Consumer Financial Protection Bureau after certain of the NCSLTs' servicers engaged in wrongdoing, in which the Objecting Minority Noteholders have intervened. In response to their broad discovery demand, the presiding judge in the *CFPB* Action granted the intervening parties leave to seek discovery on two, highly limited "Threshold Issues" that the court identified. DLC already informed the Objecting Minority Noteholders that

---

[1] As defined in DLC's Motion to Quash and for Protective Order ("DLC's Motion"), ECF Nos. 2-3.

[2] While DLC's work for the NCSLTs was fairly broad, this brief focuses solely on the limited work DLC performed for the Trusts in the *CFPB* Action.

it has no responsive documents or testimony responsive to those Threshold Issues, and that the work it performed with respect to the *CFPB* Action was limited. *See* ECF Nos. 3-3, 3-5.

Despite this, the Objecting Minority Noteholders elected to subpoena DLC (the "DLC Subpoena") and nine other third parties in the *CFPB* Action in five different jurisdictions. Now joined by the Indenture Trustee, U.S. Bank,[3] the Objecting Minority Noteholders, who have counsel in Chicago, demand transfer of their DLC Subpoena from the Northern District of Illinois to the District of Delaware. By this effort, movants seek to capitalize on the needless complexity of their own creation, and impose unnecessary burdens and expense on DLC to litigate what is a straightforward issue: whether DLC need respond to an overbroad subpoena that seeks attorney-client communications and work product-protected information. But the Intervening Parties' manufactured complexity does not rise to the level of "exceptional circumstances" necessary to transfer a subpoena-related motion. The Intervening Parties' motion to transfer should be denied.

## ARGUMENT

The Intervening Parties acknowledge that they must show "exceptional circumstances" under Rule 45(f) in order to transfer DLC's Motion to Quash and for Protective Order from this Court to the District of Delaware. ECF No. 13 at 6-7. The Advisory Committee notes to Rule 45(f) explain that, in determining whether exceptional circumstances exist:

> *[The Court's] prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions.* In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to rise in discovery in

---

[3] Although there are more Intervening Parties in the *CFPB* Action than the Objecting Minority Noteholders and Indenture Trustee, for purposes of this brief they are referred to as the "Intervening Parties."

many districts. *Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.*

(emphasis added). The central concern when determining whether a subpoena-related motion should be transferred is the burden on the local, non-party subject to the subpoena (here, DLC), whereas the party requesting transfer bears the burden to show that exceptional circumstances exist and that the interest of transfer outweighs DLC's interests. That is not the case, here.

I. **No "Exceptional Circumstances" Exist Here to Outweigh DLC's Interests in Obtaining Resolution in this Court**

The Intervening Parties attempt to manufacture exceptional circumstances by contending that the proceeding before Judge Noreika in the District of Delaware is "highly complex" and suggesting that only Judge Noreika can decide DLC's Motion to Quash and for Protective Order. But if the Court were to accept the Intervening Parties' argument, then any party could subject countless third parties to the additional burden and expense that the drafters of Rule 45(d) sought to avoid simply by issuing multiple identical subpoenas without any thought to what documents or testimony those third parties actually have. Rather than complex, the subpoena served on DLC is an uncomplicated matter that should involve only two narrow "Threshold Issues" on which Judge Noreika allowed discovery:

1. Whether the law firm of McCarter & English had the authority to execute the Proposed Consent Judgment on behalf of the Defendants under the Trust Related Agreements and applicable law; and

2. Whether—authority aside—it was improper or (in violation of Trust Related Agreements) for McCarter & English to enter into the Proposed Consent Judgment.

*See* ECF No. 3 at 2 (quoting Judge Noreika's Scheduling Order). DLC already informed the Objecting Minority Noteholders that it has no documents responsive to these Threshold Issues. *See* ECF Nos. 3-3, 3-5. But rather than accept that, the Intervening Parties make a number of

3

false statements to this Court and *ad hominem* attacks to drag DLC to Delaware. For example, they falsely state in their motion to transfer that DLC "was directly involved with the proposed consent judgment ('PCJ')" and that DLC assisted in efforts to cause McCarter & English to enter into the proposed consent judgment. ECF No. 13 at 3-4. Those statements are untrue, and DLC made that clear to the Objecting Minority Noteholders during the meet and confer process when DLC informed them that "DLC was *not involved* in the decision to have McCarter sign the proposed Consent Judgment and performed no research regarding McCarter's ability to sign the proposed Consent Judgment." *See* ECF No. 3 at 2-3 and Exhibit C thereto (emphasis added). Indeed, *DLC informed them that it has no documents related to the Threshold Issues*, because all of the work that DLC performed relative to the CFPB Action occurred *after* the decision was made that McCarter & English would execute the Proposed Consent Judgment. *See id*. at 6 and Exhibit E thereto.

  The Intervening Parties also exaggerate DLC's role regarding the proposed Consent Judgment by suggesting that DLC had a direct role and was involved in the decision to enter into the Proposed Consent Judgment. ECF No. 13 at 4, 8. Also untrue. As explained to the Objecting Minority Noteholders, DLC made suggested revisions to the Proposed Consent Judgment and shared them with the CFPB, which did not adopt them. ECF No. 13-2 at 2. The Intervening Parties continue their untrue statements by suggesting that DLC was involved in a "scheme" by the Owners of the Beneficial Interests of the Trusts, VCG, to "improperly seize control of the Trusts" that is the subject of a complaint filed against VCG. ECF No. 13 at 4. That is untrue, and the complaint filed against VCG in the Delaware Chancery Court neither names DLC as a defendant nor mentions DLC at all except to reference DLC's pending effort in

Illinois state court to confirm an arbitral award in DLC's favor and against the Trusts for fees and costs incurred by DLC during its representation of the Trusts.

These realities reveal that DLC's Motion to Quash and for Protective Order involves simple issues that this Court can resolve just as easily as Judge Noreika. Nothing is needed for the Court's analysis of these issues other than the plain language of the two Threshold Issues and DLC's representations during the meet and confer process and before this Court that DLC was not involved in the Threshold Issues and has no documents or information related to them.[4] *See Indiana Materials Processing, LLC v. Tire Waste Transp., LLC*, No. 1:15-MC-8, 2015 WL 1647461, at *4–6 (N.D. Ind. Apr. 14, 2015) (granting motion to quash, because, among other reasons, the non-party subpoena recipient represented that it had no involvement in an ownership question at issue, and the subpoena issuer failed to explain why it could not obtain documents elsewhere rather than from the non-party); *see also New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, No. CV 12-526 MV/GBW, 2015 WL 13650053, at *3 (D.N.M. June 3, 2015) (granting motions to quash two subpoenas, because the recipients made representations that they did not possess information responsive to the subpoenas). The Intervening Parties fail to present exceptional circumstances that outweigh DLC's interest in having this Court decide its Motion to Quash and for Protective Order.

The Intervening Parties argue that Judge Noreika is best able to resolve privilege objections. ECF No. 13 at 8. But this contention incorrectly assumes that this Court cannot

---

[4] This distinguishes the instant matter from *Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Elecs., Inc.*, No. 14-CV-3731, 2014 WL 2808984 (N.D. Ill. June 20, 2014), which the Intervening Parties rely on. That case granted transfer of a motion to quash because the parties disputed the interpretation of a patent law ruling by a court in the Eastern District of Michigan, which meant that the court in the Northern District of Illinois would need to delve into the *merits* of the patent litigation. *Id*. at *2. No such circumstances exist here, and the *Cont'l Auto.* court specified that it would *deny* the motion to transfer if the merits questions was not before it. *Id*. at *3. **Because this Court need not delve into the merits of the proceeding before Judge Noreika, the instant motion to transfer should be denied**.

determine what is, and what is not, a protected attorney-client communication or work product-protected information. Indeed, the Advisory Committee notes to Rule 45(f) caution that it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions.[5] Overall, contrary to the Intervening Parties' arguments, this Court can capably decide DLC's motion without addressing any purported complex questions or disrupting Judge Noreika's handling of the Threshold Issues in her court.[6] The Intervening Parties, therefore, fail their burden to show exceptional circumstances here warranting transfer. *See Extrusion Mach. & Equip., Inc. v. Ameriform Acquisition Co., LLC*, No. 2:16-MC-0001-WTL-DKL, 2016 WL 2736008, at *2 (S.D. Ind. May 11, 2016) ("[T]he Court sees no reason to transfer here given that the resolution of the motion to compel is not dependent on familiarity with the issues being litigated in the issuing court. Nor would resolution of the motion appear to impinge on the issuing court's management of the underlying litigation.").[7]

---

[5] The Intervening Parties' argument also assumes that DLC would be ordered to produce documents *unrelated* to the two Threshold Issues. DLC's Motion to Quash and for Protective Order requested a protective order against the disclosure of work product and attorney-client communications *if* ordered to produce documents unrelated to the two Threshold Issues. That means that a ruling in DLC's favor—quashing the subpoena—based on the plain language of the narrow Threshold Issues (and DLC's representations pertaining to the same) dispenses with the need to address DLC's privilege objections.

[6] The Objecting Noteholders' and the Indenture Trustee's motion to transfer contends that transfer will "facilitate" Judge Noreika's management of the proceeding before her. Doc. No. 13 at 8. But that is not the standard. As quoted above, the Advisory Committee notes to Rule 45(f) discuss avoiding *disruption* of the issuing court's case management. The Intervening Parties fail to present any concrete reason—beyond conclusory statements and speculation—that a ruling from this Court would disrupt the proceeding before Judge Noreika.

[7] The Objecting Noteholders and the Indenture Trustee rely on cases that are distinguishable, because, unlike this matter, those cases involved determinations needed from the issuing court. *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. 23, 24-26 (D.D.C. 2018) (finding exceptional circumstances because the propriety of third-party subpoenas depended on a fully briefed but undecided motion to compel in the issuing court); *Stanziale v. Pepper Hamilton LLP*, No. M8-85 (PART I) (CSH), 2007 WL 473703, at *5 (S.D.N.Y. Feb. 9, 2007) (involving privilege issues related to an already-pending motion to compel production of documents and other privilege-related motions in the issuing court); *Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 46 (D.D.C. 2014) (issuing court was already resolving foreign state secrets privilege claims at issue in the motion to quash); *The Dispatch Printing Co. v. Zuckerman*, No. 16CV80037BLOOMVALLE, 2016 WL 335753, at *3 (S.D. Fla. Jan. 27, 2016) (involving motion to quash and motion to compel that were fully briefed in the issuing court); *Edwards v. Maxwell*, No.

The Intervening Parties also attempt to show exceptional circumstances by arguing that transfer will avoid inconsistent rulings on objections being asserted by DLC and other subpoena recipients. ECF No. 13 at 9. Their argument emphasizes the largely identical subpoenas that they issued and the purported similarity between the responses and objections to all of the subpoenas. *Id*. at 2-3, 6. But any similarity is simply a byproduct of the improper and overbroad nature of the subpoenas. The Intervening Parties created the current situation in which their subpoenas are being challenged, and they should not be allowed to use that situation to their advantage by arguing that transfer is necessitated by potential inconsistent rulings on relevance, privilege, and burden objections to their purposefully overbroad subpoenas. Rather, the subpoena to DLC should be viewed in this Court for what it is: a fishing expedition.

**II.   Transfer of DLC's Motion to the District of Delaware Will Create Unnecessary Burdens on DLC**

Transfer of DLC's motion to the District of Delaware will create unnecessary litigation burdens and costs pertaining to DLC's appearance there. The Intervening Parties argue that such costs are "routine litigation costs." ECF No. 13 at 10. But that is not the case here, because *DLC is a not a party to the litigation in Delaware*. Additionally, DLC's compliance with the subpoena at issue is required in Chicago, DLC is a Chicago-based law firm (with no offices in Delaware), and the Intervening Parties already have counsel in Chicago[8] who have routinely

---

15CV07433RWSSDNY, 2016 WL 7413505, at *2–3 (S.D. Fla. Dec. 22, 2016) (the issuing court had previously ruled on a similar motion to quash); *Parks, LLC v. Tyson Foods, Inc.*, No. MISC.A. 15-634, 2015 WL 5008255, at *2 (W.D. Pa. Aug. 20, 2015) (already pending before the issuing court was a motion to compel and various discovery disputes including failure to comply with the subpoena at issue); *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429 (N.D. Cal. 2014) (involving order to compel and *in camera* review of documents in the issuing court); *Argento v. Sylvania Lighting Servs. Corp.*, No. 2:15-CV-01277-JAD-NJ, 2015 WL 4918065, at *5 (D. Nev. Aug. 18, 2015) (issuing court already addressed the exact same subpoena in dispute).

[8] The Objecting Noteholders and the Indenture Trustee even highlight that they have counsel in Chicago. Doc. No. 13 at 10.

appeared in person at court proceedings in Chicago.[9]  Forcing DLC to incur litigation burdens and costs in Delaware makes no sense when counsel for all parties are already located in Chicago and have already appeared before this Court.

That reality also dispenses with the Intervening Parties' argument that DLC can choose to appear telephonically in Delaware.  The possibility of appearing telephonically does not avoid creating unnecessary burdens on DLC, especially because DLC has interests in appearing in person wherever its rights are implicated, including rights regarding the attorney-client privilege and the work product doctrine.  DLC cannot risk undermining its rights by appearing telephonically rather than in person.  Indeed, several counsel for the proposed intervenors in the state court action brought by DLC to enforce an arbitral award of its fees for representing the NCSLTs argued at a court proceeding that the non-appearance of counsel for the NCSLTs—despite notice and explanation having been provided prior to the proceeding—should reflect negatively upon such counsel.[10]  Because counsel for all of the parties here can easily appear in person in Chicago, as they have already done in this Court, it is unfair and creates unnecessary burdens to force DLC to either appear telephonically in Delaware or travel to Delaware to appear

---

[9] In their motion to transfer, the Objecting Noteholders and the Indenture Trustee cite *DiCello Levitt & Casey LLC v. NCMSLT*, No. 2018-CH-08828 (Ill. Cir. Ct. Ch. Div.).  Doc. No. 13 at 5, n.4.  That case is a state court action in which DLC seeks to confirm an arbitral award in DLC's favor that includes fees and costs incurred by—but not paid to—DLC during its representation of the Trusts.  The Objecting Noteholders and others are seeking to intervene in that action (their motions are pending), and they have *voluntarily* traveled to and appeared in-person in Chicago several times.

[10] Those counsel—aligned with the Objecting Noteholders and the Indenture Trustee—stated the following when noting that other, current counsel for the NCSLTs could not attend a hearing pending in state court in Illinois:  (1) "Well, you know, it's telling because, you know, they're not here to defend what they did and what's going on in these other courts.  They certainly could have come here and explained this to the Court, but they're not here."; and (2) counsel's non-attendance "supports that proposition that there was not an adversarial proceeding."

8

in person.[11] DLC previously traveled to Delaware to appear in person in court there when DLC was still representing the NCSLTs. Nonetheless, DLC no longer represents the NCSLTs—and withdrew from that representation because of unpaid fee and expense bills—so, any travel to Delaware now or in the future is in no way foreseeable or routine as the Intervening Parties argue and actually increases the precise burden on DLC that led to its withdrawal in the first place.

Transferring DLC's Motion to Quash and for Protective Order to Delaware is especially burdensome due to DLC's very limited involvement in the proceeding before Judge Noreika and the fact that DLC has already informed the Intervening Parties that it possesses no responsive documents. Overall, DLC's interests in resolving its motion in Chicago are not outweighed by the Objecting Noteholders' and the Indenture Trustee's interests in transferring DLC's motion to Delaware. The unnecessary burdens and costs that transfer would create for DLC necessitate that the motion to transfer be denied, particularly because the "prime concern" under Rule 45(f) should be avoiding burdens on DLC.

Alternatively, if this Court grants the motion to transfer, DLC requests that this Court order the Intervening Parties to pay DLC for its costs and fees for attendance in the proceedings before Judge Noreika, which would decrease the burdens placed on DLC in such a situation. Fed. R. Civ. P. 45(d)(1) (requiring the court to impose "appropriate sanctions" if the party or attorney issuing and serving a subpoena fails to "take reasonable steps to avoid imposing undue burden or expense" on the non-party recipient); *see also Spears v. City of Indianapolis,* 74 F.3d 153, 158 (7th Cir. 1996) (Fed. R. Civ. P. 45 and 26 "give trial courts considerable discretion in determining whether expense-shifting in discovery production is appropriate in a given case,"

---

[11] That DLC previously traveled to Delaware because it represented the NCSLTs has no impact on the Court's analysis regarding a subpoena served upon a non-party.

and the factors involved in such a determination include: the breadth of the materials to be produced; whether that breadth looks like a fishing expedition; the relative resources of the party and non-party; whether the non-party is disinterested in the litigation, whether the non-party could have expected to have been drawn into the litigation, and whether the documents sought are privileged); *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 927-30 (N.D. Ill. 2010) (non-party subpoena recipient argued that it should not have to incur additional expense in responding to defendants' subpoena, and the court ordered defendants to share in costs for additional discovery in order to encourage them to carefully consider whether the discovery they sought is proportionate to the likely benefit).

## **CONCLUSION**

The Intervening Parties seek transfer of DLC's Motion to Quash and for Protective Order despite being informed by DLC that it neither had involvement in the two narrow Threshold Issues in the *CFPB* Action, nor has any documents related to those issues. This Court can, therefore, capably decide DLC's motion without negatively impacting the proceeding before Judge Noreika. The Intervening Parties fail their burden of showing "exceptional circumstances" warranting transfer, especially because their interests in transfer do not outweigh DLC's interests in having its Motion to Quash and for Protective Order decided by this Court. As recommended by the Advisory Committee notes to Rule 45(f), this Court should avoid the unnecessary burdens that would be placed on DLC in the District of Delaware and deny the motion to transfer. Alternatively, if this Court grants the motion to transfer, DLC requests that this Court order the Intervening Parties to pay DLC for its costs and fees for attendance in the proceedings before Judge Noreika in the District of Delaware.

Dated: February 8, 2019

Respectfully submitted by:

*/s/ Amy E. Keller*
Adam J. Levitt
Amy E. Keller
Adam Prom
**DiCELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Tel. 312-214-7900
alevitt@dlcfirm.com
akeller@dlcfirm.com
aprom@dlcfirm.com

*Counsel for Movant DiCello Levitt & Casey LLC*

## **CERTIFICATE OF SERVICE**

    I, Amy E. Keller, hereby certify that on February 8, 2019, a copy of the foregoing document was filed electronically using the CM/ECF System, which served all counsel of record.

                                                  */s/ Amy E. Keller*
                                                 Amy E. Keller