IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DICELLO LEVITT & CASEY LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 19 CV 252 |
| OBJECTING MINORITY NOTEHOLDERS TO THE PROPOSED CONSENT JUDGMENT BETWEEN THE CONSUMER FINANCIAL PROTECTION BUREAU AND THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST I and U.S. BANK NATIONAL ASSOCIATION as INDENTURE TRUSTEE, et al., | ) Judge Joan H. Lefkow |
| Defendants. | ) |

**ORDER**

Defendants Objecting Minority Noteholders' motion to transfer (dkt. [12]) is granted. The clerk is directed to transfer this action forthwith to the United States District Court for the District of Delaware for consolidation with the pending action *Consumer Fin. Prot. Bureau* v. *The Nat'l Collegiate Master Student Loan Tr., et al.*, C.A. No. 17-1323-MN. See statement.

**STATEMENT**

The Consumer Financial Protection Bureau brought an enforcement action in the United States District Court for the District of Delaware against several Delaware trusts that hold billions of dollars of student loans. (Dkt. 3 at 1.) The trusts, through their attorneys McCarter & English, agreed to a proposed consent judgment with the CFPB in September 2017. (Dkt. 3-1.) Several parties, including the objecting minority noteholders and U.S. Bank as indenture trustee, intervened to object to the proposed consent judgment. The District of Delaware permitted these intervenors to conduct limited discovery into two threshold issues about the proposed consent judgment:

1. Whether the law firm of McCarter & English had the authority to execute the Proposed Consent Judgment on behalf of the Defendants under the Trust Related Agreements and applicable law; and

2. Whether—authority aside—it was improper or []in violation of Trust Related Agreements[] for McCarter & English to enter into the Proposed Consent Judgment.

(Dkt. 3-2.) The District of Delaware originally imposed a deadline of January 22, 2019 to complete document discovery on these issues, but the deadline has been extended to March 8, 2019. (Dkt. 19 at 7.)

The intervenors issued discovery requests, including ten subpoenas across five federal judicial districts. (Dkt. 13 at 2.) Among those subpoenas was one enforceable in this district, to DiCello Levitt & Casey LLC, former counsel to the trusts. Like at least one other subpoena recipient in another judicial district, DiCello filed an action to quash the subpoena, arguing that it seeks information irrelevant to the two threshold issues. (Dkt. 2.) Another subpoena recipient, McCarter & English, does not appear to have moved to quash but has consented to transfer any subpoena-related motions from the enforcement court in the District of New Jersey to the issuing court in the District of Delaware. (Dkt. 23-1 at 4.) The Objecting Minority Noteholders now move to transfer DiCello's motion to Delaware under Federal Rule of Civil Procedure 45(f). (Dkt. 12.)

"When the court where compliance is required did not issue the subpoena, it may transfer a motion [to quash] to the issuing court . . . if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The committee notes to Rule 45(f) clarify that the court's "prime concern should be avoiding burdens on local nonparties subject to subpoenas," and that the court should not transfer unless the movant proves that countervailing interests "outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.* advisory committee's note to 2013 amendments.

On the other side of the ledger, "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* The Seventh Circuit, too, identifies the "consolidation of motions in a single appropriate court, thereby avoiding piecemeal litigation in multiple fora as well as piecemeal appeals" as the purpose of Rule 45(f). *P.H. Glatfelter Co.* v. *Windward Prospects Ltd.*, 847 F.3d 452, 458 (7th Cir. 2017). Following the advisory committee recommendation, courts regularly transfer to avoid rulings on the same issues in multiple districts or even the possibility of multiple rulings. *See, e.g.*, *In re Motion to Quash Subpoena Issued to Non-Party JPMorgan Chase Bank, N.A.*, No. 1:17-mc-00069-JMS-TAB, 2017 WL 6623060, at *3–4 (S.D. Ind. Dec. 28, 2017) (transferring motion to quash where similar motion was filed in another district); *Wultz* v. *Bank of China, Ltd.*, 304 F.R.D. 38, 46–47 (D.D.C. 2014) (transferring motion to quash based on possibility of similar subpoenas being issued). Indeed, DiCello cites only one case declining to transfer, and that case did not involve similar discovery motions being litigated across the country. *See, e.g.*, *Extrusion Mach. & Equip., Inc.* v. *Ameriform Acquisition Co.*, No. 2:16-MC-0001-WTL-DKL, 2016 WL 2736008, at *2 (S.D. Ind. May 11, 2016) (declining to transfer motion to quash single subpoena).

The court finds that exceptional circumstances warrant transfer. First, "the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendments. DiCello is one of ten subpoena recipients across the country, spanning five judicial districts. Similar motions to quash have been filed in those actions, and at least one will likely be transferred from New Jersey to Delaware. This means that as many as five courts may weigh in on the same motion to quash. This would likely interfere with the issuing court's

management of this case because the enforcement courts may reach different results and do so on different timeframes. *P.H. Glatfelter*, 847 F.3d at 458 (transfer avoids piecemeal litigation); *Wultz*, 304 F.R.D. at 46–47 (holding potential for multiple rulings constitutes exceptional circumstances). Instead of allowing five courts to address the same issues five times, the single most interested court—the District of Delaware—should answer them once.

Second, the District of Delaware "has already ruled on issues presented by the motion." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendments. The District of Delaware's limitation of discovery to two threshold issues resolved a dispute between the CFPB (who wanted narrower discovery) and the intervenors (who wanted broader discovery). DiCello argues in its motion to quash that the subpoena covers more than the threshold issues, but the District of Delaware is in the best position to determine whether the subpoena hews to that court's carefully stricken balance.

Finally, because of the complexity of the underlying litigation, the District of Delaware is better positioned to resolve this motion. Although this court cannot assume that the issuing court "is in a superior position to resolve subpoena-related motions," Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendments, the court should consider "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Judicial Watch, Inc.* v. *Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014).

The presumption that this court is equally capable of resolving the motion to quash as the District of Delaware is quickly overcome. The Delaware case is complex, involving millions of dollars and dozens of parties. Although the pending discovery issues are narrower than the full scope of the litigation, DiCello's relevancy and privilege objections implicate some of the litigation's complexity. *Compare Judicial Watch*, 307 F.R.D. at 34–35 (transferring motion to quash based in part on relevancy to complex litigation), *with Extrusion Mach. & Equip*, 2016 WL 2736008, at *1–2 (declining to transfer where recipient objected to adequacy of service). For instance, DiCello argues that communications between DiCello and Boston Portfolio Advisors (BPA) about the trusts are irrelevant to McCarter & English's authority and the propriety of the judgment under the trust-related agreements. Who is BPA? DiCello does not say; this court did not learn until the Objecting Minority Noteholders explained in their motion to transfer that BPA performed an audit of the trusts. This court is not on equal footing with the District of Delaware to determine whether DiCello's communications with BPA are relevant to the propriety of the judgment under the trust-related agreements because the trust-related agreements are not in the record here. The background needed to resolve that objection typifies this court's anticipated learning curve where the District of Delaware has none.

Finally, the considerations above outweigh DiCello's interest in local resolution. DiCello undoubtedly has an interest in resolving these issues in Illinois and would be inconvenienced by transfer to Delaware. But even though DiCello is now a nonparty to the Delaware litigation, it once was counsel for the trusts in Delaware, reducing the weight of its interest in local resolution. *See Judicial Watch*, 307 F.R.D. at 34–35 (considering nonparty's nationwide litigation activity to "significantly reduce[]" "the general interest in protecting local nonparties by requiring local resolution of subpoena-related disputes"). Moreover, DiCello can rely in Delaware on the briefs it has already filed here, minimizing its need to appear. DiCello likely can

also appear telephonically, which the advisory committee's notes to Rule 45(f) encourage the District of Delaware to allow.

Date: February 19, 2019

_____
U.S. District Judge Joan H. Lefkow