

2711 Centerville Road, Suite 201
Wilmington, Delaware 19808
(302) 656-2500 | rjk@chimicles.com

**BY E-FILE & HAND DELIVERY**　　　　　　　　　　　　　　　　　　April 1, 2019
The Honorable Maryellen Noreika,
U.S. District Court for the District of Delaware

  Re: <u>*CFPB v NCMSLT,* No. 17-cv-1323-MN</u>
     <u>*DiCello Levitt & Casey LLC v. Objecting Minority Noteholders*, No. 19-cv-352-MN</u>

Dear Judge Noreika:

  On November 29, 2018, the Court granted the Intervening Parties[1] the ability to conduct limited discovery into two narrow "Threshold Issues" involving McCarter & English LLP ("McCarter"). In conjunction therewith, the Objecting Minority Noteholders (one of the Intervening Parties) subpoenaed DiCello Levitt & Casey LLC ("DLC") (n/k/a DiCello Levitt Gutzler LLC), which previously represented the Trusts primarily in *separate* litigation against its servicers (including but not limited to attempting to obtain an audit of the Trusts over the objections of certain servicers), had limited involvement in defending the Trusts in this action.

  Upon service of the subpoena, DLC informed the Objecting Minority Noteholders' attorney that *DLC was not involved in the decision to have McCarter sign the proposed Consent Judgment and performed no research regarding McCarter's ability to sign the proposed Consent Judgment* ("PCJ") (*see* Exhibit 1 attached hereto). Notwithstanding that fact, the Objecting Minority Noteholders refused to withdraw or modify their subpoena, which also seeks documents and information on numerous topics unrelated to the Threshold Issues—including DLC's complete billing records and client file for the Trusts, work product, and attorney-client communications ("DLC Subpoena," Exhibit 2). While DLC would be willing to provide documents and testimony responsive to the Threshold Issues, the reality is that it has none.

  At the same time, the Objecting Minority Noteholders (as well as other of the Intervening Parties) interjected themselves into a pending Cook County, Illinois, action concerning the confirmation of an arbitration award in DLC's favor for payment of its attorneys' fees for representing the Trusts. Not only do the topics within the DLC Subpoena far exceed the scope of the Threshold Issues, but they even appear, in many instances, to seek discovery related to arguments that the Intervening Parties are advancing in the Cook County action to prevent DLC from being paid, when no discovery has been allowed there. Abusing the subpoena process to go on a fishing expedition for arguments that the Intervening Parties can use in other litigation is patently improper (and there is nothing in place to prevent such a thing from happening).[2]

  DLC conducted two meet and confer conference calls regarding the DLC Subpoena. During the second call, counsel for some of the Intervening Parties suggested that the scope of the DLC Subpoena could be narrowed from its admittedly broad scope[3] by only seeking documents related to the work DLC performed in this action (including communications), take

---

[1] The "Objecting Minority Noteholders," the servicers whom the CFPB found had engaged in wrongdoing, and others.

[2] *See Baker v. Buffenbarger*, No. 03-C-5443, 2004 WL 2124787, at *2–4 (N.D. Ill. Sept. 22, 2004) (granting motion for protective order to limit the use of deposition testimony "to purposes directly related to settlement and trial preparation in this case").

[3] The Intervening Parties have neither issued a new subpoena nor withdrawn the DLC Subpoena. To avoid waiver, DLC asserts that the original DLC Subpoena is impermissibly broad.

DLC's deposition, and agree to a protective order that would render confidential and prevent the use of documents obtained in this action in other matters. Although that *could* ostensibly narrow the issues that would be presented before the Court, the fact remains that the documents being sought through a narrowed subpoena are *still* unrelated to the Threshold Issues, and *still* constitute work product and protected attorney-client communications.

**A.      The DLC Subpoena is overly broad and unduly burdensome.**

The DLC Subpoena seeks documents and testimony on a number of topics unrelated to McCarter's authority.[4] Even if the Intervening Parties narrow the DLC Subpoena's scope to only that work product and confidential attorney-client communications at issue in this action, the request is still broader than the narrow Threshold Issues. Particularly where a subpoena is overly broad, it increases the burden on the responding third party to gather documents and prepare a witness to provide testimony. And DLC has no documents on the Threshold Issues:

> The work performed by DLC took place only over a handful of months—we entered our appearances on November 10, 2017, and withdrew on January 5, 2018. Notably, all of the work that DLC performed relative to the CFPB Action occurred *after* the decision was made that McCarter & English would execute the Proposed Consent Judgment. Accordingly, DLC does not have records or research related to McCarter & English's authority to sign the Proposed Consent Judgment, nor does DLC have a legal opinion regarding the propriety of McCarter & English to execute the Proposed Consent Judgment.

Exhibit 3. A reasonable search and review of DLC's client file confirms the minimal scope of DLC's work related to this action. DLC's case file on the Trusts—containing information and legal strategy on other lawsuits, including litigation strategy regarding cases in which the Intervening Parties may be adverse to the Trusts—is irrelevant to McCarter's authority to sign the PCJ. *See Davis v. Carmel Clay Schools*, 286 F.R.D. 411, 413 (S.D. Ind. 2012) (quashing a subpoena requesting drafts of pleadings, research, and attorney communications because they did not meet the test for relevancy and thereby imposed an undue burden); *Shah v. Rodino*, No. 3:13-CV-103-JD-JEM, 2017 WL 2664764, at *4-5 (N.D. Ind. June 20, 2017) (quashing subpoena to a non-party, because the discovery is irrelevant and insufficiently linked to the instant lawsuit). Moreover, requiring DLC to produce its client file—when the Objecting Minority Noteholders have also subpoenaed McCarter, the Owners, and several other third parties—would be disproportionate and outweigh the benefit of obtaining that discovery.

Even assuming that the Intervening Parties were willing to narrow the DLC Subpoena, it still would, by definition, seek documents beyond the Threshold Issues (which would be all that DLC has). Quashing the subpoena and issuing a protective order is appropriate because even a narrowed subpoena would still be too broad. *Rodriquez v. Parsons Infrastructure & Tech. Grp., Inc.*, 271 F.R.D. 620, 621-23 (S.D. Ind. 2010) (finding that a subpoena served on a non-party requesting the attorney's entire file merited a protective order, ordering the payment of fees associated with the motion to quash and for protective order).

**B.      If the Court requires DLC to produce documents unrelated to the two "Threshold Issues," DLC respectfully requests a protective order.**

Under Rule 45(d)(3)(A)(iii) and (iv), the Court must quash a subpoena that "requires

---

[4] Including but not limited to communications between DLC and Boston Portfolio Advisors ("BPA") concerning the Trusts broadly (Testimony Topic 16) and communications between DLC and the other law firms who represented the Trusts (Testimony Topic 17).

disclosure of privileged or other protected matter, if no exception or waiver applies," or which "subjects a person to undue burden."  Here, the DLC Subpoena seeks DLC's work product performed on behalf of the Trusts, and attorney-client communications.  (*See, e.g.,* Exhibit 4, Testimony Topics 20, 21; Document Topics 1, 2, 13, 16).

Documents obtained for the purpose of preparing for litigation constitute fact work product, and documents containing mental impressions, investigations, and discussions concerning those investigations constitute opinion work product.  Both are protected.[5]  Fed. R. Civ. P. 26(b)(3)(A). Investigations and research performed by DLC related to separate litigation involving the Trusts, and even the limited research performed by DLC concerning this action (which, again, did not relate to the Threshold Issues), are protected work product because they were prepared in anticipation of litigation, so DLC should not have to produce them.[6]  *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (reversing district court opinion finding that work product protection did not apply).  The Intervening Parties' Response suggests that DLC's work product and communications should not be shielded from the Intervening Parties, which include the "Owner Trustee and the Trust's *other representatives* and beneficiaries."  Case 1:19-cv-00352, ECF No. 19 at 14.  This suggestion is particularly counterintuitive, considering that, among other reasons, the Trusts have filed suit against the Pennsylvania Higher Education Assistance Agency ("PHEAA").  By the Intervening Parties' argument, DLC would need to share its privileged communications and work product regarding the Trusts' action against PHEAA (a "representative" of the Trusts *and an intervenor in this action* (ECF No. 96)) *with* PHEAA. The Intervening Parties' Response also misrepresents several issues, including fabricating a conspiracy theory that, somehow, DLC was part of a scheme to get control of, and siphon money away from the Trusts.  The Response is far from the truth.  These are the facts:  DLC played no "direct role" in negotiating the PCJ with the CFPB; DLC was never part of any "scheme to gain control of the Trusts and their cash flows"; DLC only performed work in this action *after* the decision was made that McCarter would execute the PCJ; DLC's proposed revisions to the PCJ were never adopted; and only a small amount of DLC's fees account for work performed in this action.

The DLC Subpoena should be quashed and the Court should issue a protective order so that DLC need not comply with it, because the DLC Subpoena far exceeds the scope of the Threshold Issues, DLC does not have information related to those Issues, and requiring DLC to produce documents and provide testimony on the rest of the topics would not only exceed that narrow scope, but would also violate the attorney-client privilege and work product protections.

                                                                   Respectfully,
                                                                   */s/ Robert J. Kriner, Jr.*
                                                                   Robert J. Kriner, Jr.  (#2546)

Enclosures
cc:      All Counsel of Record (via CM/ECF)

---

[5] A party has to demonstrate "substantial need" for "fact work product" and "an inability to obtain the substantial equivalent of the information without undue hardship." *Woodard v. Victory Records, Inc.*, No. 14 CV 1887, 2014 WL 2118799, at *7 (N.D. Ill. May 21, 2014).  The Intervening Parties cannot meet this standard, because—as discussed above—they have subpoenaed other parties *who have the information they are looking for.*

[6] Also, requiring DLC to create massive privilege logs related to its work for the Trusts that has nothing to do with the Threshold Issues is—in itself—a burdensome exercise.